# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ROBERT MACEDO,

    *Plaintiff,*

vs.

GREEN VALLEY CHEMICAL CORP. and
MIDWEST CARBONICS, INC.,

    *Defendants.*

Case No. 11-2666 EFM

## MEMORANDUM AND ORDER

In this negligence action, Plaintiff Robert Macedo alleges that he was injured in a slip-and-fall accident at the shared manufacturing facilities of Defendants Green Valley Chemical Corp. ("Green Valley") and Midwest Carbonics, Inc. ("Midwest"), in Creston, Iowa. This matter comes before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. 17). Because the Court finds that it lacks personal jurisdiction over Defendants, but that transfer best serves the interests of justice, the Court denies Defendants' motion to dismiss and transfers this case to the United States District Court for the Southern District of Iowa.

# I. Factual and Procedural Background[1]

Plaintiff is an individual resident of Douglas County, Kansas. At the time of the incident at issue in this case, Plaintiff was employed by McMullen Trucking, Inc., a Kansas trucking company. Defendants Green Valley and Midwest are manufacturers that share a facility in Creston, Iowa.[2] Midwest is a wholly-owned subsidiary of Green Valley, but Defendants maintain separate corporate identities, maintain separate finances, serve different clients, and produce different products. Green Valley is in the business of producing anhydrous ammonia for sale to various customers. Midwest is in the business of producing dry ice, which is commonly used in the meat-packing industry to preserve meat and leather products during transport.

National Beef Packing Company, LLC ("National Beef"), is a meat-packing company located in Dodge City, Kansas. In December 2009, National Beef required dry ice for its operations and placed orders with Pain Enterprises, Inc. ("Pain Enterprises"), a dry ice distributor located in Indiana. Pain Enterprises then engaged Midwest to fill the orders for several shipments of dry ice for delivery to National Beef's facilities in Kansas. Midwest does not ship any of its products, and all of its sales are completed at its manufacturing facility in Creston, Iowa. Accordingly, National Beef engaged Plaintiff's employer, McMullen Trucking, to transport the dry ice.

On December 29, 2009, during the course of his employment, Plaintiff arrived at Defendants' facilities to receive a load of dry ice from Midwest for delivery to National Beef. While closing the doors of his trailer, Plaintiff suffered injuries when he slipped and fell on ice in

---

[1] In accordance with standards for dismissal, the Court has set forth the following facts related in the light most favorable to the plaintiff.

[2] Defendants stipulate that Green Valley owns the manufacturing property in Creston, Iowa, but that Midwest does not own any property. Memo. in Support of Defs. Mot. to Dismiss, Doc. 18, at 2.

Defendants' parking lot. Plaintiff alleges that his injuries resulted from Defendants' negligence in maintaining their premises. In support of his claims, Plaintiff asserts that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 and that this district is the proper venue under 28 U.S.C. § 1391(b)(2) because much of his medical treatment occurred in Kansas.

Defendants argue that dismissal is appropriate for lack of personal jurisdiction and improper venue. In support of their motion, Defendants submitted the affidavit of Bill Clem, Chief Operating Officer for both Green Valley and Midwest. Clem's affidavit establishes that Defendants are not incorporated or registered to do business in Kansas, and Defendants do not have any offices or manufacturing facilities in Kansas. Further, Defendants do not solicit business from, or direct advertisements to, potential customers in Kansas. Green Valley maintains a passive website, which contains information about the corporation and its products but does not allow online purchases.

Defendants also argue that they do not set limitations or attempt to control where its customers sell or distribute their products once the purchase is completed at Defendants' facility in Creston, Iowa. Similarly, Defendants do not have any agents who are based in Kansas, and neither Defendant sends its agents or employees to Kansas for the purpose of soliciting business. The majority of Green Valley's sales are completed at its facility in Iowa, and less than three percent of its business comes from a Kansas customer. Green Valley employs three truck drivers who live in Kansas and transport Green Valley products to multiple states, including Iowa, Missouri, and Kansas.

## II. Legal Standards

### A. Standard for Dismissal under Rule 12(b)(2)

This Court considers a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.[3] When a defendant challenges personal jurisdiction, the plaintiff must make a prima facie showing that the Court has personal jurisdiction over the defendant.[4] The plaintiff may meet this prima facie burden by submitting affidavits or other writings.[5] If a plaintiff carries this prima facie burden, the defendant must show "that the presence of some other considerations would render jurisdiction unreasonable."[6] When a factual dispute exists, the Court resolves the dispute in favor of the plaintiff.[7]

### B. Standard for Dismissal under Rule 12(b)(3)

The standards governing motions to dismiss for improper venue are virtually the same as the standards governing motions to dismiss for lack of personal jurisdiction.[8] When a defendant challenges venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure, the plaintiff must present a prima facie showing that venue is proper.[9] The Court construes all disputed facts in the light most favorable to the plaintiff.[10]

---

[3] Fed. R. Civ. P. 12(b)(2).

[4] *TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007) (citations omitted).

[5] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[6] *TH Agric. & Nutrition, LLC*, 488 F.3d at 1286.

[7] *Id.*

[8] *Johnson v. N. States Power Co.*, 2000 WL 1683658, *1 (D. Kan. Nov. 2, 2000).

[9] *Thompson v. Titus Transp., LP*, 2012 WL 5933075, *3 (D. Kan. Nov. 27, 2012).

[10] *M.K.C. Equip. Co., Inc. v. M.A.I.L. Code, Inc.*, 843 F. Supp. 679, 683 (D. Kan. 1994).

## III. Analysis

### A. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

In a diversity action, "personal jurisdiction over a nonresident defendant is determined by the law of the forum state."[11] Under Kansas law, the exercise of personal jurisdiction generally requires a two-step analysis to determine "whether the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state and comports with due process requirements of the Constitution."[12] However, because the Kansas long-arm statute is construed liberally, federal courts may proceed directly to the due process analysis.[13] To meet the constitutional requirements of due process, there must be "minimum contacts" between the defendant and the forum state.[14] If the Court finds that minimum contacts exist, it must then consider whether the exercise of jurisdiction is reasonable, such that it does not offend the "traditional notion of fair play and substantial justice."[15]

#### 1. Minimum Contacts

The constitutional touchstone of due process is "whether the defendant purposely established 'minimum contacts' in the forum state."[16] "It is critical to the due process analysis . . . . that the defendant's conduct and connection with the forum State are such that he should

---

[11] *Caldwell–Baker Co. v. S. Illinois Railcar Co.*, 225 F. Supp. 2d 1243, 1259 (D. Kan. 2002).

[12] *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304–05 (10th Cir. 1994).

[13] *Ablulimir v. U-Haul Co. of Kansas, Inc.*, 2011 WL 2746094, *2 (D. Kan. July 13, 2011).

[14] *Bell Helicopter Textron, Inc. v. Heliqwest Intern.*, Ltd., 385 F.3d 1291, 1295 (10th Cir. 2004) (internal citations omitted).

[15] *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 113 (1987).

[16] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

reasonably anticipate being haled into court there."[17] A plaintiff may establish the existence of minimum contacts in two ways: specific jurisdiction and general jurisdiction.[18] The Court will address each of these issues in turn.

### a. Specific Jurisdiction

"The minimum contacts necessary for specific personal jurisdiction are established when the defendant has 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum."[19] "Purposeful availment requires actions by the Defendant which create a substantial connection with the forum state."[20] The purposeful availment requirement ensures "that a defendant will not be subject to the laws of a jurisdiction 'solely as the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person.' "[21] "Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff . . . [and generally] requires . . . affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state."[22]

Plaintiff asserts that Midwest is subject to personal jurisdiction because his injuries occurred while loading dry ice that Midwest knew would ultimately arrive in Kansas. In

---

[17] *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U .S. 286, 295 (1980)).

[18] *In re Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996) (quoting *Burger King*, 471 U.S. at 472).

[19] *Id.*; *see Merriman v. Crompton Corp.*, 146 P.3d 162, 168 (Kan. 2006).

[20] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (quotations omitted).

[21] *Knowles*, 87 F.3d at 418.

[22] *Rambo v. Am. S. Ins., Co.*, 839 F.2d 1415, 1420 (10th Cir. 1988) (internal quotations omitted).

response, Midwest argues that specific jurisdiction is inappropriate because it did not purposefully direct any of its activities toward Kansas. The Court agrees. The facts before the Court show that Midwest did not enter into a contract to sell dry ice to National Beef or to transport the product through a Kansas trucking company. Instead, Midwest agreed to fill an order placed by an independent foreign distributor, Pain Enterprises, and Midwest did not engage a trucking company to ship its product. The Clem affidavit establishes that this sale was completed at Midwest's Iowa facility and that Midwest did not control where its product was subsequently transported or ultimately consumed. Plaintiff has not produced an affidavit or other testimony to controvert these facts.

Plaintiff correctly observes that Midwest's order forms show that a significant volume of dry ice purchased by Pain Enterprises would be transported to National Beef by a third party trucking company. However, the Clem affidavit establishes that contact with Kansas resulting from this transaction did not arise from the actions of Midwest. Rather, any contacts with this state resulted from the distribution and transportation activities of Pain Enterprises, National Beef, and McMullen Trucking. Because Midwest's relevant contacts with Kansas were not attributable to its own actions, the Court finds that Midwest did not purposefully direct its activities toward Kansas for the purposes of specific jurisdiction.

With regard to Green Valley, Plaintiff asserts that specific jurisdiction is appropriate because Green Valley has three Kansas employees and conducts some of its business with at least one customer in the state. Green Valley responds by arguing that regardless of its activity in this forum, specific jurisdiction cannot apply because Plaintiff's claims do not arise from Green Valley's contacts with Kansas. The Court agrees.

Plaintiff's claims primarily involve allegations that Iowa-based Defendants failed to maintain their Iowa facilities, thereby causing Plaintiff to slip and fall in Iowa while loading a shipment of Midwest's dry ice ultimately destined for Kansas. However, Plaintiff does not demonstrate any nexus between his claims and Green Valley's alleged contacts with Kansas. Though Green Valley employs three Kansas truck drivers and conducts less than three percent of its business with a Kansas customer, it is undisputed that Green Valley and Midwest sell different products and serve different customers. Plaintiff does not allege or demonstrate that Green Valley was responsible for Midwest's sale of dry ice to Pain Enterprises, which Plaintiff would ultimately transport to National Beef in Kansas. Indeed, Plaintiff's claims involve Green Valley only to the extent that it owns the shared the Iowa facility where Plaintiff slipped and fell. Accordingly, even if Plaintiff could establish that Green Valley purposely directed some activity toward Kansas, Plaintiff's allegations fail to establish a connection between those contacts and his injuries in this case. Accordingly, the Court finds that Green Valley is not subject to specific jurisdiction because Plaintiff's claims do not arise out of Green Valley's alleged contacts with Kansas.

Finally, Plaintiff argues that because Defendants shared the same manufacturing facility and Chief Operating Officer, Midwest's contacts with Kansas should be attributed to Green Valley. The Court disagrees. It is well established that "a holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity."[23] Defendants' affidavit testimony establishes that Green Valley and Midwest constitute separate legal entities with distinct

---

[23] *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974).

finances, customers, and product lines. The Clem affidavit also demonstrates that Green Valley does not control the day-to-day activities of Midwest. Plaintiff does not present any basis for piercing the corporate veil, and the Court therefore declines to attribute Midwest's interstate contacts to Green Valley. For the reasons stated above, the Court finds that Defendants lack the minimum contacts necessary to establish specific personal jurisdiction.

### b. General Jurisdiction

"General jurisdiction exists when the defendant's contacts with the forum state are so 'continuous and systematic' that the state may exercise personal jurisdiction even when the claims are unrelated to the defendant's contacts with the forum state."[24] For general jurisdiction to apply, "the defendant's contacts with the state must be greater than those required for specific jurisdiction."[25] To determine whether continuous and systematic business contacts support the exercise of general jurisdiction, courts should consider the following:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.[26]

While Plaintiff primarily discusses the factors relevant to specific jurisdiction, Plaintiff makes one allegation that appears to address a standard relevant to general jurisdiction: "Defendants systematically sold dry ice to a distributor, Pain Enterprises, who contracted . . . McMullen

---

[24] *Kluin v. Am. Suzuki Motor Corp.*, 56 P.3d 829, 835 (Kan. 2002) (citing *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir.1996) (internal quotations omitted)).

[25] *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 146 (10th Cir. 1996).

[26] *Trierweiler*, 90 F.3d at 1533.

Trucking to deliver the ice to National Beef in Dodge City."[27]  For the following reasons, the Court finds Plaintiff's allegation insufficient to establish general jurisdiction.

With regard to Midwest, the Clem affidavit demonstrates that Midwest does not have an office in Kansas, does not have agents in Kansas, does not advertise or solicit business in Kansas, and does not hold itself out as doing business in Kansas.  While it is clear that Midwest sold dry ice to Pain Enterprises with knowledge that a third party would transport it to National Beef's facilities in Kansas, Midwest neither transports its product nor controls where its customers sell or distribute their products once the purchase is completed at Defendants' facility in Creston, Iowa.  Because these undisputed facts reveal that Midwest did not maintain continuous and systematic business contacts with Kansas under the factors enumerated above, the Court finds insufficient cause to exercise general jurisdiction over Midwest.

The Court also finds insufficient cause to subject Green Valley to general jurisdiction. Like Midwest, Green Valley is not incorporated or registered to do business in Kansas, does not own property or maintain an office in Kansas, and does not hold itself out as doing business in the state.  Green Valley does not direct advertisements toward customers in Kansas.  Also, because less than three percent of Green Valley's business comes from Kansas, Green Valley does not conduct a significant volume of its business in this state.[28]

Although Green Valley employs three truck drivers who happen to live in Kansas, this fact alone is insufficient to support the exercise of general jurisdiction.  The Tenth Circuit has held that a corporation is not subject to jurisdiction simply because it has an employee in the

---

[27] Pl.'s Memo. in Opp. to Mot. to Dismiss, Doc. 22, at 10.

[28] *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 410-11 (finding insufficient continuous and systematic business contacts to support jurisdiction when a company purchased eighty percent of its products in the forum state).

forum state.[29]  Rather, the plaintiff must show that the foreign corporation hired the employee because of their state of residence.[30]  Here, Plaintiff has not alleged or demonstrated that Green Valley hired its Kansas employees due to their state of residence.  To the contrary, because these employees drive Green Valley product to numerous states, there is no indication that Kansas residency is critical to their employment.

Finally, Plaintiff implies that Green Valley had contact with Kansas through its website.  The mere existence of a website does not necessarily contribute to continuous and systematic contacts necessary to establish general jurisdiction.[31]  When personal jurisdiction involves the existence of a web site, courts evaluate the level of interactivity that the web site creates with residents of the forum state.[32]  Kansas courts have repeatedly held that maintaining a passive website is not sufficient to subject a foreign corporation to general jurisdiction.[33]  While Green Valley does maintain a website, the screenshots that Plaintiff produced reveal that the website is passive because it "provides information about the company and its products but does not permit customers (from Kansas or elsewhere) to place orders for products via the website."[34]  Because Green Valley's website simply contains product descriptions and contact information, it does not

---

[29] *See Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1076 (10th Cir. 1995).

[30] *Id.*

[31] *Martin-Manatee Power Partners, LLC v. Peerless Mfg. Co.*, 233 P.3d 758, 764 (Kan. Ct. App. 2010); *Sprint Commc'ns, L.P. v. Cox Commc'ns, Inc.*, 896 F. Supp. 2d 1049 (D. Kan. 2012) (holding that "maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state.") (citations omitted).

[32] *Soma Med. Int'l v. Std. Chartered Bank*, 196 F.3d 1292, 1296 (10th Cir. 1999) (holding that exercise of personal jurisdiction turns on the level of interactivity and commercial nature of information exchanged through a web site).

[33] *See id.* (citing *Kluin*, 56 P.3d at 901-02);

[34] *Martin-Manatee Power Partners*, 233 P.3d at 764.

form the basis for exercising personal jurisdiction.[35] For these reasons, the Court finds that Green Valley has not engaged in the continuous and systematic contacts with Kansas necessary to exercise general personal jurisdiction.

### 2. Fair Play and Substantial Justice

If minimum contacts exist between a defendant and the forum state, courts must then consider whether the exercise of jurisdiction is reasonable, such that it does not offend the "traditional notion of fair play and substantial justice."[36] However, because the Court finds that Defendants lack sufficient minimum contacts with Kansas, the Court does not reach the second part of the due process inquiry concerning whether the exercise of jurisdiction is reasonable under the circumstances. Further, because the Court does not have general or specific jurisdiction over Defendants, the Court does not address Defendants' argument regarding improper venue.

## B. Transfer to the United States District Court for the Southern District of Iowa

Under 28 U.S.C. § 1631, a district court that lacks personal jurisdiction over a defendant must transfer the case to a court with jurisdiction if such a transfer serves the interests of justice.[37] The Tenth Circuit has articulated several factors relevant to this determination, including whether the claims would be time-barred if filed in the proper forum, whether the claims likely have merit, and whether the plaintiff selected the original forum in good faith.[38]

---

[35] *See Sheldon v. Khanal*, 605 F. Supp. 2d 1179, 1185-86 (D. Kan. 2008).

[36] *Asahi*, 480 U.S. at 113.

[37] *In re Cline*, 531 F.3d 1249, 1251 (10th Cir. 2008) (finding that 28 U.S.C. § 1631's phrase "if it is in the interest of justice" grants district courts discretion to transfer an action or dismiss without prejudice).

[38] *Trujillo v. Williams*, 465 F.3d 1210, 1223 n.16 (10th Cir. 2006).

When possible, courts favor the resolution of claims on their merits over dismissal due to procedural deficiencies.[39]

Here, Plaintiff's request to transfer his case pursuant to 28 U.S.C. § 1631 to the Southern District of Iowa best serves the interests of justice. The statute of limitations for personal injury claims in Iowa is two years.[40] Because Plaintiff's injury occurred on December 29, 2009, the statute of limitations ran on December 29, 2011. If this Court dismissed his claim entirely, Plaintiff would be time-barred from re-filing. Additionally, Plaintiff's allegations, if true, are sufficient to state a plausible claim for negligence. Finally, Plaintiff represents to the Court that he filed his action in this district in good faith, and Defendants do not contest the propriety of Plaintiff's filing. Therefore, the Court finds that the interests of justice require transfer rather than dismissal. The Court directs this case be transferred to the United States District Court for the Southern District of Iowa pursuant to 28 U.S.C. § 1631.

**IT IS ACCORDINGLY ORDERED** this 25th day of April, 2013, that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Doc. 17) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk transfer this action to the United States District Court for the Southern District of Iowa pursuant 28 U.S.C. § 1631.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[39] *See Martinez v. Martinez*, 294 F. App'x 410, 416 (10th Cir. 2008).

[40] Iowa Code Ann. § 614.1(2).